Our fifth and sixth cases are remote arguments. The fifth case is United States v. Michael Baird, Appeal No. 22-1877. Mr. Schultz, Mr. Bloodworth, can you hear us okay from the courtroom? Yes, Your Honor. I'm able to hear you fine. Okay, Mr. Schultz, over to you. May it please the Court, Counsel for the Government, Todd Schultz, Assistant Federal Public Defender representing the appellant in this case. Because no rational trier of fact could reasonably infer that the appellant intended to entice a minor, the District Court's judgment and conviction in this case must be vacated. The appellant raised two issues in his brief. I'm only proceeding this morning on the first of those issues, that is a sufficiency of the evidence challenge. The second issue was decided by this Court in the York case, subsequent to the briefing of the parties. The standard of review before the Court is de novo. I acknowledge that a sufficiency of the evidence challenge is a significant hurdle, one that is nearly insurmountable, as this Court has said, but nonetheless, I believe we're able to carry that burden this morning. The issue before this Court is whether appellants' online messages can reasonably be inferred as an attempt to persuade, induce, entice, or coerce a minor. These words are not defined by the statute. They are, however, words of common usage and are ascribed their ordinary meaning. They're effectively synonymous. The idea conveyed by the words is one person leading or moving another person by persuasion or influence as to some action or state of mind. The ordinary meaning of these words entails something more than mere agreement. Ordinary meaning of these terms doesn't change depending on the context or the parties involved. Persuade doesn't mean one thing in the context of 2422B and something entirely different in the context of a consumer responding to an unsolicited advertisement. Based on appellant's conduct in this case, he could have been charged under federal and state offenses that prohibit sex with minors or travel with intent to engage in sex with minors. The enticement statute, however, is not one of those statutes. 2422B criminalizes the online attempt to knowingly persuade, induce, entice, or coerce a minor. The follow-up intent to engage in sex after the persuasion is clearly a separate and different intent. Congress made a clear choice in 2422B to criminalize persuasion and the attempt to persuade, not the attempt to have sex with a minor or travel with intent to have sex with a minor. The agents who orchestrated this sting gave no thought to 2422B's need for persuasion. The fictitious parent gave no indication that persuasion was needed and provided no opportunity for it. The agent's response to the appellant's first email asking that he supply more information about his advertisement on Craigslist for incest, the agent responds, quote, no limit family fun, end quote. Occasionally at a jury trial, a prosecutor will ask the jurors to apply their common sense and life experience in deciding the case. I implore this court to do the same. And if the court does that, then I believe based on life experience, based on common sense, everyone knows that you only resort to persuasion when it's necessary. No one attempts to persuade someone to do something they're already planning to do. That would be absurd. Common sense tells us that a consumer does not attempt to persuade an advertiser to provide him with the goods he's freely offering. It actually works the other way around. It's the advertiser who's attempting to persuade the consumer to partake of his goods. And that's precisely what the government did in this case. In this case, it literally posted an advertisement online soliciting individuals interested in incest and asked those individuals who responded to the advertisement if they would like to have sex with a fictitious 10-year-old child. In the district court, I analogize this factual situation to a case where a female undercover police officer posing as an underage prostitute approaches a John to ask him whether he's interested in paying for sex. No one would claim that if he accepted her offer for sex, that he had persuaded her to have sex. No one would claim that in asking her what services she was willing to perform, that he was attempting to induce her to have sex. No one would claim that if he asked her how much it would cost that he was attempting to entice her into having sex. If the undercover officer said that she would require him to wear a condom, no one would claim that his willingness to wear a condom was an attempt to coerce her into having sex. The facts of this case cannot reasonably be inferred as an attempt to coerce the minor to have sex. He never attempted to contact the minor directly, never asked to speak with her. In fact, I would suggest there's no facts in the record which suggest the minor was even aware of my client's existence. Unlike other attempted enticement cases before this court, my client also did not attempt to use the parent as an intermediary to persuade his daughter. He never asked to speak directly with her. He does ask for information about her, but never asked to convey any information from him to her. The sad reality of this case is the minor in this case is treated by the government and by my client as nothing more than chattel. Her thoughts and feelings about the government's planned sexual encounter are never discussed. And that quite frankly is what distinguishes this case from other enticement cases before this court such as McMillan and Hosler. Finally, I would note that with respect to the gummy bears, according to the district court, the gummy bears are one of the most significant pieces of evidence. The district court's comments in that regard are particularly troubling as they suggest that the court, like the FBI and the government, conflated the offense of travel with intent to engage in illicit sexual activity with the offense of attempted enticement. I would also note with respect to the gummy bears that in-person persuasion is not criminalized under 2422B. 2422B, of course, criminalizes only those forms of persuasion which use a means of interstate commerce. Let me ask you about that particularly. Because you're right, in McMillan and Hosler, we found a certain set of facts to meet 2422. And that's that third, what I'll call the third bucket of enticement. You know, direct attempt to use a parent as an intermediary to convey a defendant's message to the child. That's that third bucket. We said, we find it here in McMillan, we find it in Hosler. But we are also bound, it seems, by our identification of two other buckets that other courts have found to meet the statute. We haven't found them yet, but we said, okay, they are out there. And that second bucket is finding the persuasion element satisfied when the defendant trades on the influence of a parent over a minor child or because the parent, the defendant exploits the parent's ability to bring the child to a meeting place where the defendant could attempt to directly persuade the child, that in-person persuasion. So just exploiting the ability to get the parent to the meeting place so there can be this rendezvous. What's your, can you tell me your response to this second McMillan bucket that we haven't found yet, but we've said other courts have found this bucket to satisfy 2422B? Yes, Your Honor. Well, it's my belief that those other courts got it wrong, that this court is correct by only using that third bucket. I would suggest to you that using that alternative approach that other courts have applied robs the statute of its meaning. It essentially reads the words coerce, persuade, entice out of the statute. It would read the statute so broadly that it would be no different than 18 U.S.C. 2425, which criminalizes the transmission of a minor's name, address, telephone number, social security with the intent to entice, encourage, offer, or solicit any person to engage in sexual activity. I would also note that simply agreeing with a parent to have sex at the parent's request with their child cannot, to the extent the English language retains its meaning, be viewed as an attempt to persuade. There's no attempt to persuade in this case, and I have very little time left, but I would reserve the last few moments for rebuttal if possible. Okay, very well. Mr. Schultz, we'll give you a minute or two for rebuttal. Okay, for the government, Mr. Bloodworth, good morning. Good morning or good afternoon, Your Honors. May it please the court and approve the counsel, Casey Bloodworth, on behalf of the United States. Your Honors, I'll jump right into that discussion that we left off with with Mr. Schultz, and I interpret Mr. Schultz's argument as an attempt to limit what was recognized in MacMillan, that using an adult intermediary to communicate with a child requires either direct communication or a specific request to pass information on to the child. Now, first I'll point out that under the standard of review, that there's certainly sufficient evidence where a reasonable fact finder could show that even under that limited interpretation of MacMillan, that the evidence was sufficient. And I'll point out, as was argued in the government's brief, that during the conversation, the appellant sought clarification with the purported father on what he would be able to do sexually with this child. When he stated to the purported father, tell them what they want. As pointed out, a reasonable effort of him saying that was to invite dialogue with the purported minor on what sexual acts or particular sexual acts that child would be uncomfortable with. The appellant interprets that evidence differently, but as this court has repeatedly held, the evidence need not exclude every reasonable hypothesis of innocence and which version of the evidence to believe is up to the fact finder. So even though the record, even under that limited interpretation of MacMillan, the evidence is sufficient, the government doesn't read MacMillan as to be so limited. MacMillan was decided because the facts supported that narrow interpretation. But as your honors pointed out, there are other circuits and other schools of thought on the use of adult intermediary regarding communications with those intermediaries and children. The attempt could be to persuade an adult to allow access to the child, exploiting a child. But we did not adopt those other schools of thought in MacMillan. We said we didn't have to. Agreed. Are you urging us to adopt that bucket number two? Are you resting your argument solely on you? This phrase, tell me what they want, meets bucket number three, end of story. No, your honor. I'm not certainly advocated that that's the only interpretation of the evidence. I think the court could decide this under that narrow interpretation of Millan with that argument. When the opinion said, tell me what they want, as inviting a dialogue, a reasonable inference is inviting a dialogue with that purported father to determine the sexual limitations of their upcoming rendezvous. How is tell me what they want inviting a dialogue as opposed to asking the father, you know, you know your child. I... Tell me what I'm going to get to do when I go in there. Well, and I think your honor's phrasing of that illustrates the difference. Tell me what they want. I mean, unless the father knew ahead of time what they wanted, in particular with this planned meeting, he didn't have to ask. But the father is the one who told him he engages in incest with his daughter. Very true. Engages in incest with his daughter, but at the outset of this conversation, the father said he was looking for something different. He was looking to watch another individual engage in sexual intercourse with his child. Your honor, I'm not saying that that's the only interpretation of the evidence. I believe it's a reasonable inference, which is what we're, under the standard of which we review sufficiency of the evidence, settles the question. I don't think that that's the only way to settle the question. We'll look at, if the court does adopt the second bucket, so to speak, of McMillan in using the equation on the fourth intermediary to allow access to children or provide a child for upcoming planned meeting, the gummy bears is the right inference of that. But even more so, the gummy bears are direct evidence of an attempt to persuade using those facilities of interstate commerce. The conversation was brought up of this child preferring a certain type of candy, and it was indicated that the candy would be appropriate for a potential upcoming rendezvous. The appellant himself sought clarification. Well, is it any type or is it a specific type? What does the child prefer? And he was told not the hard ones. Just a few short hours after that conversation and a few short minutes before he showed up at the reported minor's residence, he indicated he was stopping to get those. That's a clear attempt at persuasion. It falls under the court's precedent in what this court has decided, both in Hossler and McMillan, but would also fall in that second bucket of McMillan on using that intermediary to provide a future face-to-face encounter with a child. Just like the district court below, this record supports ample evidence and sufficient evidence where a reasonable fact-finder could find that Mr. Baird committed the offense of attempted enticement of a minor. The appellant's simply asking this court to do what this court has routinely refused to do, and that's re-evaluate the evidence. The standard is that reversal is appropriate when there's no evidence in the record to support conviction beyond a reasonable doubt. There's certainly some evidence, and in this case, there's compelling, overwhelming, and insurmountable evidence supporting the district court's decision below, particularly with the appellant seeking clarification on what type of gift he could bring. This court repeatedly recognized in McMillan and both in Hossler that that in and of itself is sufficient to show an attempt to persuade and do certain things, but as this court often cautioned, those are not the only and exhaustive list of types of evidence to support that element. In this case, there's abundant other evidence such as what the district court found compelling, similar to Hossler, that Mr. Baird's communication could be inferred as an attempt to illustrate himself as an appropriate sexual partner. This back-and-forth about what the child could want to do, could do, and what the child could not do was similar and sufficient to show, just as in Hossler, that this particular individual will be a suitable sex partner for this child. That's a reasonable inference also, and when you view this evidence in light most favorable to the government, it supports conviction. And under the standard that's enunciated by this court over and over again, those reasonable inferences viewed in light of the government and in light of the verdict, and in support of the verdict, is only able to come with no evidence in the record to support that finding. If there are no other questions from the court, the government will roughen its roof and its argument and yield the time back to the court and to the appeals. Okay, very well. Thank you. Mr. Blodsworth, Mr. Schultz, we'll go back to you and give you those couple of minutes that were just handed over. Your Honor, I appreciate the extra time. In closing, I would just note that there is no disputing that the appellant's conduct in this case violates numerous different federal and state criminal statutes. 18 U.S.C. 2422B is not one of them. The government made a decision not to charge him, since he traveled from Kentucky, made a discretionary decision not to charge him with intent to travel, travel with intent to engage in illicit sexual conduct with a minor. There are simply no facts in this case that display anything. There's no reasonable inference to be drawn other than appellant was willing to join in the FBI's pre-existing plan to meet with a fictitious minor for sex. Common sense, I do believe, resolves this case. This isn't a close call. Everyone knows that if an advertiser says, please, if you're interested in my good, please come to my store and buy it, no one would suggest that a consumer who shows an interest in a product, and sadly, that's little more than what the FBI held this child out to be, that that person is then persuading the person who is providing the good. And so, I do think it comes down to the common ordinary meaning of the words in the statute, and those certainly require more than mere agreement. And it's also important, I think, as you look at the context of those conversations to understand that from the beginning, there's no need to persuade. This father, the first response is saying he's into no limit family fun. So to construe anything that my client says as an attempt to persuade goes against common sense. Nobody takes the effort to persuade or entice or induce when it's not necessary, and the government made it clear it wasn't necessary. Let me just ask you, Mr. Schultz,  to walk back because we can't. Our holding in McMillan that attempts to get a message, to convey a message to a child, satisfy the definition here of using an adult intermediary. Are you? No. In fact, what I'm arguing in this case is there is no attempt to convey a message through the intermediary to a child. Thank you, Your Honors. Thanks to both counsel. We'll take the case under advisement. Move to our sixth and final argument of the morning. United States versus Jason Rodriguez, Appeal Number 22.